# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

NORTH ALABAMA FABRICATING
COMPANY, INC.,

       Plaintiff,

v.

BEDESCHI MID-WEST CONVEYOR
COMPANY, LLC, et al.,

       Defendants.

Case No. 16-2740-DDC-TJJ

## MEMORANDUM AND ORDER

Plaintiff North Alabama Fabricating Company, Inc. brings this lawsuit, asserting fraud and contract claims, against four defendants: (1) Bedeschi Mid-West Conveyor Company, LLC; (2) Dearborn Mid-West Conveyor Company, Inc.; (3) Larry Harp; and (4) Braxton Jones. Invoking Fed. R. Civ. P. 12(b)(6), defendants filed a Motion to Dismiss for Failure to State a Claim (Doc. 10). Plaintiff filed a Response opposing defendants' motion (Doc. 14). And, defendants filed a Reply (Doc. 20).

Plaintiff then filed a Motion to Strike, in part, defendants' Reply (Doc. 23). Defendants have filed a Response opposing plaintiff's Motion to Strike (Doc. 24). After carefully considering all of the parties' submissions, the court denies defendants' Motion to Dismiss (Doc. 10) and denies plaintiff's Motion to Strike (Doc. 23). The court explains why below.

## I.     Factual Background

The following facts are taken from plaintiff's Complaint (Doc. 1), accepted as true, and viewed in the light most favorable to plaintiff. *ASARCO LLC v. Union Pac. R.R. Co.*, 755 F.3d 1183, 1188 (10th Cir. 2014) (explaining that, on a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the

court must "accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the [plaintiff]." (citation and internal quotation marks omitted)).

Plaintiff is a structural steel fabricating company located in Alabama. Defendants Bedeschi Mid-West Conveyor Company, LLC ("Bedeschi") and Dearborn Mid-West Conveyor Company ("Dearborn") are material handling systems providers that serve companies operating in various commercial industries. Plaintiff alleges that these two companies acted interchangeably and as one and the same when interacting with plaintiff. Plaintiff's Complaint thus refers to these two defendants collectively as "Mid-West." Because it accepts plaintiff's allegations as true, the court also refers to these two defendants collectively as "Mid-West" when setting out the factual background that governs the court's ruling on the current motion.

Essar Steel Minnesota, LLC ("Essar") retained Mid-West as a material handling supplier for a construction project at its manufacturing facility ("the Minnesota Project"). After its retention, Mid-West engaged plaintiff as a material sub-supplier for the Minnesota Project. Mid-West contracted with plaintiff, who agreed to manufacture fabricated steel equipment and support structures for use in the Minnesota Project. Mid-West and plaintiff entered into a Blanket Subcontract Agreement ("Subcontract") in September 2015.[1]

In October 2015, Mid-West issued to plaintiff a Subcontract Purchase Order (the "Purchase Order").[2] The Purchase Order incorporates, among other things, the terms of the Subcontract, as well as the "Mid-West Conveyor Terms and Conditions" (the "Terms and

---

[1]     Plaintiff has attached the Subcontract to its Complaint. Doc. 1-1. The Subcontract states: "THIS SUBCONTRACT AGREEMENT . . . is entered into by and between BEDESCHI MID-WEST CONVEYOR, LLC . . . and North Alabama Fabricating Company . . . ." *Id.* at 2. The Subcontract never references Dearborn.

[2]     Plaintiff also has attached the Purchase Order to its Complaint. Doc. 1-2. The Purchase Order identifies Bedeschi Mid-West Conveyor as the contractor. The Purchase Order never references Dearborn.

Conditions").[3] Plaintiff refers to the Purchase Order, Terms and Conditions, and Subcontract collectively as the "Contract Documents." Plaintiff has no contractual relationship with Essar, the company that hired Mid-West for the Minnesota Project.

The Purchase Order and Terms and Conditions establish a contract price of $4,637,371.00 that Mid-West is obligated to pay to plaintiff for performance under the Contract Documents. Section 3 of the Terms and Conditions provides that Mid-West temporarily may suspend work and shipments from plaintiff. Specifically, this provision recites that Mid-West "may change the rate of scheduled shipments or direct temporary suspension of scheduled shipments." Doc. 1-3 at 2.

Between November and December 2015, plaintiff delivered nine shipments of fabricated steel to the Minnesota Project. Plaintiff detailed and manufactured this product specifically for the Minnesota Project. And, plaintiff cannot use this product for any other purpose. Mid-West paid the invoices associated with those shipments.

In the fall of 2015, Essar stopped construction on the Minnesota Project because it could not secure the additional funding needed to finish the construction. On December 22, 2015, Mid-West sent a letter to plaintiff. It reported that Mid-West had given Notice of Default to Essar because Essar had failed to provide and maintain Letters of Credit as a payment method for invoices submitted for work performed on the Minnesota Project. The letter also explained that, because Mid-West had no assurance of payment from Essar, Mid-West was invoking the provisions of Section 3 of the Terms and Conditions. As described above, that section allows Mid-West to direct temporary suspension of shipments for the Minnesota Project. The letter also asserted that Mid-West would continue to pursue compliant Letters of Credit or other credit

---

[3] Plaintiff has attached the Terms and Conditions to its Complaint. Doc. 1-3. The Terms and Conditions only reference Bedeschi. The Terms and Conditions never reference Dearborn.

facilities from Essar that would assure payment and permit Mid-West to resume shipments. The letter promised to keep plaintiff advised of future developments. Mid-West's temporary suspension applied to shipments of material then in the process of fabrication. It also applied to all future shipments not yet in fabrication.

The next day, plaintiff sent a letter to Mid-West stating that it would suspend further operations and shipments. The letter also stated that plaintiff would await reinstatement of the suspended work. Afterwards, plaintiff sent invoices to Mid-West for the additional costs plaintiff had incurred from the work's suspension, as—it contends—Article 24 of the Subcontract allows. Mid-West never paid these invoices.

On May 2, 2016, representatives for Mid-West and plaintiff met to discuss the possibility of Mid-West lifting the temporary suspension and having plaintiff resume shipments to the Minnesota Project. Both Mid-West and plaintiff agreed that, if this happened, the payment terms established by the Contract Documents would continue to control and Mid-West would remain obligated to satisfy all outstanding invoices.

On May 4, 2016, Mid-West sent a letter to plaintiff lifting its temporary suspension and directing plaintiff to resume shipments to the Minnesota Project immediately. Mid-West requested that plaintiff ship the material as quickly as possible so that Mid-West could be paid under a letter of credit between Essar and Mid-West that required delivery of materials on or before June 10, 2016. Plaintiff communicated to Mid-West that it expected Mid-West to pay plaintiff's increased costs arising from the earlier suspension and the future accelerated shipment schedule. Defendants Larry Harp (President and CEO of Mid-West) and Braxton Jones (Project Manager for Mid-West) represented to plaintiff's President, John R. Parrish, that Mid-West would compensate plaintiff for these expenses.

On May 5, 2016, plaintiff sent a letter to Mid-West confirming its intention to resume shipments. The letter acknowledged the position that Mid-West was in with its letter of credit with Essar. But, the letter also clarified that plaintiff expected payment under the terms of the Contract Documents. Plaintiff and Mid-West never have altered the payment terms established by the Purchase Order and Terms and Conditions.

Between May and July 2016, plaintiff delivered 33 more shipments of fabricated steel to the Minnesota Project. These shipments totaled more than $1.3 million. Like the earlier shipments, plaintiff had manufactured the product specifically for the Minnesota Project. Plaintiff could not use the product for another other purpose. Mid-West never paid the invoices associated with these shipments.

Mid-West assured plaintiff that the letter of credit provided the necessary surety to enable Mid-West to compensate plaintiff for its work. But, plaintiff repeatedly communicated to Mid-West that Mid-West's payment obligations to plaintiff were independent of any compensation it might receive under the letter of credit. Mid-West has denied responsibility for the increased costs plaintiff incurred from the accelerated shipments. Mid-West also has questioned the price basis and costs associated with plaintiff's past-due invoices. Plaintiff asserts that Mid-West's questions are an attempt to fabricate reasons excusing Mid-West's failure to pay the invoices. Plaintiff has provided Mid-West all information it has requested in a consistent and timely fashion. Yet, Mid-West has raised questions about each of plaintiff's invoices long after payment was due. Plaintiff asserts that Mid-West failed to raise any of these issues within a reasonable time after receipt of the invoices.

Plaintiff contends that Mid-West has sought to vary the terms of the Contract Documents informally. These informal variations have included the payment terms. Plaintiff asserts that

Mid-West has attempted to vary the payment terms to benefit Mid-West and at plaintiff's expense. Plaintiff repeatedly has declined any attempts to amend or alter the Contract Documents. At all times, plaintiff has reserved its rights under the Contract Documents.

On July 8, 2016, Essar filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware. Plaintiff asserts that Mid-West has shown no intention to adhere to its contractual relationship with plaintiff. To the contrary, plaintiff asserts that Mid-West's words and actions show that it does not intend to comply with its contractual obligations.

On October 28, 2016, plaintiff filed this action. Doc. 1. Plaintiff asserts three claims arising from Mid-West's failure to compensate plaintiff for its work under the Contract Documents. The three claims are: (1) breach of contract against Bedeschi and Dearborn; (2) fraud, promissory fraud, and misrepresentation against Bedeschi, Dearborn, Larry Harp, and Braxton Jones; and (3) fraudulent suppression against Bedeschi, Dearborn, Larry Harp, and Braxton Jones. Defendants have moved to dismiss all claims, except the breach of contract claim against Bedeschi. The court addresses defendants' dismissal arguments in Part V below.

## II.     Legal Standard

Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'" *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

Although the court must assume that the complaint's factual allegations are true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1263 (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court may consider "not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). A court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* (quoting *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)).

### III.     Documents Considered on the Motion to Dismiss

Before turning to the substance of the pending motions, the court considers whether it properly may consider certain documents when deciding the motion to dismiss. As explained above, when deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court may consider

"not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference." *Smith*, 561 F.3d at 1098.

Here, the court considers the Subcontract, Purchase Order, and Terms and Conditions in its analysis below. The court concludes that considering these documents is proper because plaintiff refers to these documents in its Complaint and plaintiff has attached the documents to the Complaint as exhibits. *See* Doc. 1 at 3 (Complaint ¶¶ 8–9) (referencing the Contract Documents); Doc. 1-1 (Subcontract); Doc. 1-2 (Purchase Order); Doc. 1-3 (Terms and Conditions). Also, the Contract Documents are central to plaintiff's claims, and the parties do not dispute their authenticity.

The court also considers two letters that plaintiff has attached to its Response to Defendants' Motion to Dismiss. Docs. 14-1, 14-2. Defendants argue that Fed. R. Civ. P. 12(d) prohibits the court from considering these letters on a motion to dismiss because they are documents outside the pleadings. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). The court disagrees. Here, the two letters are not matters outside of the pleadings. Plaintiff's Complaint specifically references both letters.

The first letter is dated December 22, 2015. Doc. 14-1. It was sent from defendant Braxton Jones on Dearborn Mid-West Conveyor Company letterhead, and it identifies Mr. Jones as "DMW Project Manager." *Id.* The letter is addressed to plaintiff's Executive Vice President, and it provides notice of suspension of shipments for the Minnesota Project. *Id.* Plaintiff's Complaint references this letter and quotes two paragraphs from it. Doc. 1 at 4 (Complaint ¶ 16).

The second letter is dated May 4, 2015.  Doc. 14-2.  Plaintiff explains that the date is a typographical error—the letter actually was sent on May 4, 2016.  Doc. 14 at 3 n.1.  Defendants do not dispute plaintiff's date correction.[4]  This letter also was sent by Braxton Jones on Dearborn Mid-West Conveyor Company letterhead, and it identifies Mr. Jones as "DMW Project Manager."  Doc. 14-2.  The letter is addressed to plaintiff's Executive Vice President, and it provides notice that shipments to the Minnesota Project had resumed.  *Id.*  Again, plaintiff's Complaint references and quotes this letter.  Doc. 1 at 5 (Complaint ¶ 21).

Although a court cannot consider matters outside the pleadings on a motion to dismiss, it "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *Smith*, 561 F.3d at 1098 (quoting *Alvarado*, 493 F.3d at 1215).  Here, each letter satisfies this standard.  First, plaintiff's Complaint refers to the two letters.  Second, the documents are central to plaintiff's claims against Dearborn—specifically that Dearborn is liable to plaintiff for its breach of contract and fraud claims because Dearborn and Bedeschi interacted with plaintiff as if they were one and the same.  Third, the parties do not dispute the documents' authenticity.  Although defendants argue that the court cannot consider these two letters on a motion to dismiss, they never assert that the documents are inauthentic.  To the contrary, defendants argue that the letters' contents support dismissal of plaintiff's claims.

For these reasons, the court concludes that it properly may consider the two letters when deciding defendants' motion to dismiss.  Such consideration of the two letters does not convert the motion to dismiss to a motion for summary judgment.  *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385–86 (10th Cir. 1997) (affirming district court's

---

[4]  The typographical error also is evident from the letter's contents.  The letter references shipments made under the Purchase Order "dated September 25, 2015."  Doc. 14-2.  It also directs plaintiff to resume shipments "beginning 5/09/16."  *Id.*

refusal to convert a Rule 12(b)(6) motion to dismiss into one for summary judgment when it considered a letter that "was indisputably authentic and central to [plaintiff's] breach of contract claim" and thus was "not 'outside the pleading' for purposes of the 12(b)(6) motion").

## IV.    Motion to Strike

The court next considers plaintiff's Motion to Strike defendants' Reply in Support of its Motion to Dismiss. Doc. 23. Plaintiff moves to strike, in part, defendants' Reply because, plaintiff argues, the Reply asserts the new argument that plaintiff's breach of contract claim against Bedeschi fails as a matter of law. In its original motion, defendants only sought dismissal of plaintiff's breach of contract claim against Dearborn. Doc. 10 at 3–4. The motion did not seek dismissal of the breach of contract claim against Bedeschi. *See generally id.* The motion argued that the parties to the written contract are plaintiff and Bedeschi—not Dearborn. *Id.* at 3–4. And thus, defendants argue, plaintiff has failed to state a breach of contract claim against Dearborn. *Id.*

In plaintiff's Response, plaintiff argues that its Complaint sufficiently pleads that Bedeschi and Dearborn acted as one and the same when dealing with plaintiff. Thus, plaintiff has named both defendants in its breach of contract claim. To support its position on this issue, plaintiff attached two letters to its Response. Docs. 14-1, 14-2. These letters are printed on Dearborn letterhead, identify Project Manager Braxton Jones as a Dearborn employee, and provide instructions to plaintiff about suspending and resuming shipments to the Minnesota Project. Plaintiff's Complaint references those letters and quotes portions of them. Doc. 1 at 4, 5 (Complaint ¶¶ 16, 21). Plaintiff did not attach these letters to its Complaint. But, as explained above, the court may consider the letters on a motion to dismiss because they are referenced in the Complaint, central to plaintiff's claims, and the parties do not dispute their authenticity.

In its Reply, defendants argue that if the court considers the two letters on the motion to dismiss, the letters' content supports dismissal of all of plaintiff's claims. Specifically, defendants contend that the letters show that the parties agreed that plaintiff would not receive payment until Bedeschi was paid under the letter of credit. Because Bedeschi never has been paid, defendants argue that it owes no obligation to plaintiff. And thus, defendants assert, plaintiff's claims against all defendants fail as a matter of law.

Plaintiff moves to strike defendants' Reply because defendants never asserted this argument in their original motion. That is, defendants never sought dismissal of plaintiff's breach of contract claim against Bedeschi. Defendants disagree. They contend that they properly asserted this argument in response to new allegations that plaintiff raised in its Response. Defendants argue this is precisely the purpose of a reply brief. Doc. 24 at 2 (citing *Vonlintel v. Eagle Commc'ns, Inc.*, No. 14-4125-KHV, 2015 WL 5093271, at *1 (D. Kan. Aug. 28, 2015) ("A reply which merely responds to matters placed in issue by the response, and does not spring upon the opposing party new reasons for [granting the original motion] is entirely proper.")). The court partially agrees with defendants. Although defendants' Reply raises arguments that respond to plaintiff's allegations about the two letters, defendants' Reply also seeks dismissal of plaintiff's breach of contract claim against Bedeschi based on the content of those letters. Defendants never moved to dismiss this claim in their original motion. The court thus could disregard this argument. The court nonetheless addresses this request below, and explains why it does not warrant dismissal of plaintiff's claims at the motion to dismiss stage.

The court also concludes that a motion to strike is not the proper procedure here. When a reply raises a new argument, "the proper course of action for the nonmoving party to respond to such arguments is to seek leave to file a surreply." *See Sheldon v. Khanal*, No. 07-2112-KHV,

2008 WL 474262, at *4 (D. Kan. Feb. 19, 2008) (denying a motion to strike a reply as improperly raising new arguments but considering whether the nonmoving party could obtain leave to file a surreply under our court's local rules). The court thus denies plaintiff's motion to strike.

## V.    Motion to Dismiss

The court now considers defendants' Motion to Dismiss. Doc. 10. Defendants assert five arguments seeking dismissal of certain claims in plaintiff's Complaint. The court addresses each one, in turn, below.

### A.  Does Plaintiff State a Claim for Relief Against Dearborn?

Defendants assert that plaintiff fails to state a claim against Dearborn because Dearborn is not a party to the Contract Documents and plaintiff alleges no facts showing that Dearborn played any role in connection with plaintiff's contractual relationship with Bedeschi. In Kansas,[5] a breach of contract claim requires: "(1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach." *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013). Defendants argue that plaintiff has failed to allege the first element—the existence of a contract between plaintiff and Dearborn.

---

[5]     The parties' submissions cite Kansas law but never explain why Kansas law applies. But, after reviewing the Contract Documents, the court is satisfied that Kansas law is the governing law here.

In a diversity case, like this one, the court applies the substantive law of the forum state, including its choice of law rules. *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1170 (10th Cir. 2010) (citation omitted). In Kansas, courts generally apply the law chosen by the parties to control their agreement unless doing so would contravene public policy. *Brenner v. Oppenheimer & Co., Inc.*, 44 P.3d 364, 375 (Kan. 2002). Here, the Subcontract provides that Kansas law governs. Doc. 1-1 at 17. The Terms and Conditions also provide that Kansas law governs. Doc. 1-3 at 4. The court thus applies Kansas law because the parties have chosen Kansas law to govern their contractual relationship. Also, the parties never dispute that Kansas law governs.

Indeed, none of the Contract Documents identify Dearborn as a party to the contract. Instead, all of the Contract Documents reference an agreement between plaintiff and Bedeschi. But, plaintiff alleges in its Complaint that Bedeschi and Dearborn "acted interchangeably and as one in the same for purposes of its interactions with [plaintiff]." Doc. 1 at 1 (Complaint ¶ 1). Defendants assert that this statement is a bald conclusion that fails to state a plausible claim against Dearborn under the Fed. R. Civ. P. 8 pleading requirements. The court disagrees.

Supporting this allegation, plaintiff's Complaint references communications that Dearborn sent to plaintiff about the parties' contractual relationship for the Minnesota Project. Plaintiff's Complaint collectively refers to Bedeschi and Dearborn as Mid-West because, it contends, the two companies acted interchangeably when interacting with plaintiff. The Complaint states that "Mid-West" sent plaintiff a letter on December 22, 2015, requesting plaintiff to suspend shipments for the Minnesota Project. Doc. 1 at 4 (Complaint ¶ 16). The Complaint also states that "Mid-West" sent plaintiff a letter on May 5, 2016, directing plaintiff to resume shipments. Doc. 1 at 5 (Complaint ¶ 21). Both of these letters are on Dearborn's letterhead, are sent on behalf of Dearborn, and are signed by defendant Braxton Jones as "DMW [Dearborn Mid-West] Project Manager." Docs. 14-1, 14-2. These letters, which plaintiff incorporated into its Complaint by reference, include sufficient facts to support, if true, a plausible finding that Bedeschi and Dearborn acted interchangeably and as one and the same when interacting with plaintiff.

Thus, the Complaint has alleged sufficient facts to make it plausible that plaintiff entered into a contract with both Bedeschi and Dearborn, even though the plain language of the Contract Documents refer only to Bedeschi. Plaintiff has stated a plausible claim for relief against Dearborn and so, the court denies plaintiff's Motion to Dismiss on this ground.

**B.  Are Plaintiff's Fraud Claims Duplicative of Its Breach of Contract Claim?**

Defendants next argue that plaintiff's fraud claims fail to state a claim because they simply restate its breach of contract claim.  Defendants contend that plaintiff alleges the same conduct to support both its breach of contract and fraud claims.  Defendants also argue that plaintiff seeks the same damages for its fraud claims as it seeks for its breach of contract claim.  Defendants thus argue that the court should dismiss plaintiff's fraud claims because they merely duplicate its breach of contract claim.

In Kansas, "[w]hen parties contemplate a remedy in the event of a breach of contract, the bargained-for existence of a contractual remedy displaces the imposition of tort duties and default consequences."  *Universal Premium Acceptance Corp. v. Oxford Bank & Tr.*, 277 F. Supp. 2d 1120, 1129 (D. Kan. 2003).  But, this rule aside, "a party may be liable in tort for breaching an independent duty toward another, even where the relationship creating such a duty originates in the parties' contract."  *Id.* at 1129–30.  One such independent duty is the duty to avoid mispresenting preexisting or present facts.  *See id.* at 1130 (explaining that "a misrepresentation claim must 'relate to preexisting or present fact; statements, or promises about only future occurrences are not actionable.'" (quoting *Graphic Techs., Inc. v. Pitney Bowes, Inc.*, 998 F. Supp. 1174, 1179–1180 (D. Kan. 1998) (further citation omitted))).

A plaintiff also may assert a misrepresentation claim based on a "promise to do something in the future, if the promisor has no intention at the time the promise was made to carry it out [because the promiser has committed] deceit, and if the promiser obtained anything of value by reason thereof, there is actionable fraud."  *Gerhardt v. Harris*, 934 P.2d 976, 981 (Kan. 1997) (citing *El Dorado Nat'l Bank v. Eikmeier*, 300 P. 1085, 1089 (Kan. 1931)).  Thus, in Kansas, "[w]hen the alleged fraud relates to promises or statements concerning future events, the

gravamen of such a claim is not the breach of the agreement to perform, but the fraudulent misrepresentation concerning a present, existing intention to perform, when no such intention existed." *Id.* (citing *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 596 P.2d 816, 824 (Kan. 1979)).

Also, the Kansas Supreme Court has allowed litigants to assert contract and tort claims based on the same set of facts. *See Burcham v. Unison Bancorp, Inc.*, 77 P.3d 130, 145–46 (Kan. 2003); *Bittel v. Farm Credit Servs. of Cent. Kan.*, 962 P.2d 491, 498 (Kan. 1998). The Kansas court has explained that "when the same conduct could satisfy the elements of both a breach of contract [claim] or of an independent tort [claim], unless the conduct is permitted by the express provisions of a contract, a plaintiff may pursue both remedies." *Burcham*, 77 P.3d at 145 (quoting *Bittel*, 962 P.2d at 498).

Applying this line of cases, the court concludes that plaintiff has stated plausible claims for both breach of contract and fraud. Plaintiff's Complaint alleges that defendants made various misrepresentations involving a present existing intent to perform certain acts when defendants had no such intention. Doc. 1 at 10 (Complaint ¶ 48). For example, the Complaint alleges that defendants misrepresented that they would pay all invoices that plaintiff timely submitted as well as the increased costs and expenses arising from the accelerated shipment scheduled. *Id.* (Complaint ¶ 46). The Complaint also alleges that defendants failed to disclose present, existing, material facts that were likely to mislead plaintiff, including the fact that defendants had no intention to abide by the terms of the Contract Documents. *Id.* at 11 (Complaint ¶ 55). These allegations, if proven true, could support a fraud claim independent of a breach of contract claim under Kansas law.

Also, viewing the Complaint in the light most favorable to plaintiff, the Complaint alleges that defendants breached their duty to refrain from misrepresenting present or preexisting facts when they told plaintiff about a letter of credit between Mid-West and Essar. Plaintiff asserts that defendants misrepresented that the letter of credit would provide payment to Mid-West. Plaintiff contends that defendants misrepresented that this letter of credit provided the necessary surety to enable Mid-West to compensate plaintiff for the increased costs incurred from temporary suspension and then reinstatement on an accelerated schedule—payments that, defendants contend, are not recoverable under the Contract Documents. *Id.* at 5–6 (Complaint ¶¶ 22, 23, 27, 28). These alleged misrepresentations are independent of the contractual duties imposed by the Contract Documents.

Defendants cite no provision of the contract that authorizes this alleged conduct or limits plaintiffs' ability to pursue a tort claim under this theory. *See Burcham*, 77 P.3d at 145 (explaining that a plaintiff may assert both contract and tort claims "unless the conduct is permitted by the express provisions of a contract" (citation and internal quotation marks omitted)). Although defendants cite the Terms and Conditions that allow Bedeschi to "change the rate of scheduled shipments or direct temporary suspension of scheduled shipments, neither of which shall entitle [plaintiff] to a modification of the price for goods or services covered by this order," this part of the contract refers only to Bedeschi's right to make changes to the shipment schedule. Doc. 1-3 at 2. Defendants assert that this provision authorized their request for accelerated shipments and entitles plaintiff to no additional compensation. But, plaintiff's theory asserts that plaintiff is entitled to the additional compensation not based on the Contract Documents, but from defendants' alleged misrepresentations that they would pay the additional compensation. The Contract Documents do not authorize defendants to make these alleged

misrepresentations. And, thus, plaintiff may assert fraud claims based on the alleged misrepresentations, along with its breach of contract claim.

Defendants' Reply also argues that its conduct was authorized by the December 22, 2015 and May 4, 2016 letters that Braxton Jones sent to plaintiff. Defendants contend that these letters constituted an agreement to alter the payment terms of the Contract Documents so that Bedeschi owed no obligation to pay plaintiff until it received payment from Essar under the letter of credit. Because Bedeschi never has received payment, defendants contend that it never was obligated to pay plaintiff. Defendants thus argue that all of plaintiff's claims fail as a matter of law. [6]

Plaintiff disagrees, of course, with defendants' interpretation of the Contract Documents and the two letters. Plaintiff argues that the Subcontract prohibits modification of the parties' agreement "unless in writing and duly signed by" the parties. Doc. 1-1 at 16. Plaintiff contends that these letters do not satisfy the Subcontract's requirements for modification and thus do not change the terms of the Contract Documents.

All of these arguments require the court to interpret the parties' Contract Documents. They also require the court to resolve a factual dispute about those agreements and the correspondence attendant to the parties' contractual relationship. The court cannot decide these issues on a motion to dismiss. Instead, the court must view the Complaint's allegations in the light most favorable to plaintiff to determine whether plaintiff has stated a claim for relief. Here, the Complaint alleges that defendants made fraudulent misrepresentations independent of duties arising under the Contract Documents. The Complaint alleges that defendants misrepresented their pre-existing and present intent to perform certain acts. It also alleges that defendants mispresented that a letter of credit provided the surety necessary to pay plaintiff for additional

---

[6]     This is the argument that plaintiff moved to strike because defendants never raised it in the original motion. The court considers it nonetheless, concluding that it provides no reason to dismiss plaintiff's claims.

17

costs plaintiff incurred.  Defendants cite no provision of the Contract Documents that allow defendants to make these alleged misrepresentations.  So, with these allegations, plaintiff may assert fraud claims as well as its breach of contract claim because plaintiff alleges that defendants violated a duty created independent of the contract.

The cases defendants cite as support for their motion are distinguishable from the facts alleged here because those cases involved tort claims arising from defendants' *contractual* duties, not an independent duty that gave rise to a fraud claim.  *See*, *e.g.*, *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 675–76  (10th Cir. 2007) (explaining that the plaintiff's fraud claim was based on defendant's alleged misrepresentation that it would perform its obligations under the parties' contract and thus holding that the plaintiff's claim "sounds in breach of contract, not fraud"); *Brown v. Chaffee*, 612 F.2d 497, 503 (10th Cir. 1979) ("[Plaintiff] cannot turn an action for breach of contract into an action for fraud by merely alleging reliance on representations that the contract would be performed and detriment from its breach"); *VinStickers, LLC v. Millernet Corp.*, No. 07-2031-JWL, 2008 WL 360578, at *3 (D. Kan. Feb. 8, 2008) (concluding that plaintiff's fraud claim was merely a claim that defendant had breached the parties' contract by charging plaintiff more than the parties agreed in the contract); *LaCrosse Furniture Co., Ltd. v. Shoda Iron Works Co., Ltd.*, No. 06-CV-2505-JTM, 2007 WL 4463572, at *2 (D. Kan. Dec. 17, 2007) (holding that plaintiff's fraud claim was "merely a claim that [defendant] breached its contract . . . and that [plaintiff] was injured by the defendant['s] failure to satisfy its contractual obligation.  Such a claim is appropriate for contractual remedies, not fraud."); *Heller v. Martin*, 782 P.2d 1241, 1245–46 (Kan. Ct. App. 1989) (rejecting plaintiff's claim for punitive damages because plaintiff made no evidentiary showing of damages caused by fraud "in addition to and beyond the breach of contract damages").

Also, the court rejects defendants' argument that plaintiff is seeking the same damages for both claims. Plaintiff's breach of contract claim seeks to recover the Purchase Order amounts plus amounts plaintiff incurred complying with Mid-West's temporary suspension and accelerated shipping schedule. Doc. 1 at 8 (Complaint ¶ 38). The fraud claims seek the "substantial losses and damages" that plaintiff sustained from defendants' alleged fraud, misrepresentation, fraudulent concealment, suppression, and deceit. *Id.* at 11, 12 (Complaint ¶¶ 52, 59). The court recognizes that plaintiff cannot make a double recovery, but should plaintiff prevail on its claims, it can recover its extra-contractual damages if it proves the allegations pleaded in the Complaint. *See Ice Corp. v. Hamilton Sundstrand Inc.*, 444 F. Supp. 2d 1165, 1173 (D. Kan. 2006) ("Plaintiff will obviously not be allowed to make a double recovery, but at this point may plead contract and tort claims in the alternative based on these specific misrepresentations."). Plaintiff thus has alleged damages from the alleged fraud that are separate and distinct from its alleged contractual damages.

The court concludes that plaintiff may plead alternative claims for fraud and breach of contract. *See Lowe v. Postrock Midcontinent Prod. LLC*, No. 13-4075-JAR, 2013 WL 6000004, at *4 (D. Kan. Nov. 12, 2013) (holding that plaintiffs could bring both breach of contract and misrepresentation claims based on the same conduct because the misrepresentation claims arose from the general duty to refrain from misrepresenting material present or preexisting facts and thus were independent of the contract); *see also Shields v. U.S. Bank*, No. Civ. A. 05-2073-CM, 2005 WL 3335099, at *2 (D. Kan. Dec. 7, 2005) (concluding that, although the court would not permit plaintiff to make a double recovery, plaintiff could plead alternative claims for negligence and breach of contract). Defendants' Motion to Dismiss is denied on this basis.

### C. Has Plaintiff Sufficiently Pleaded Fraud with Particularity?

Defendants next assert that plaintiff has failed to plead its fraud claims with particularity as Fed. R. Civ. P. 9(b) requires. The rule requires a party when "alleging fraud or mistake [to] state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The rule's purpose "is 'to ensure that the complaint provides the minimum degree of detail necessary to begin a competent defense.'" *Fulghum v. Embarq Corp.*, 785 F.3d 395, 416 (10th Cir. 2015) (quoting *McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 469, 478 n.2 (6th Cir. 2014)).

A fraud claim "must 'set forth the time, place and contents of the false representation, the identity of the party making the false statements[,] and the consequences thereof.'" *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (quoting *Lawrence Nat'l Bank v. Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991)). This pleading standard requires "[a]t a minimum . . . the who, what, when, where, and how of the alleged fraud." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726–27 (10th Cir. 2006) (citations and internal quotation marks omitted).

But, the rule also allows a party to assert general allegations of "[m]alice, intent, knowledge, and other conditions of a person's mind." Fed. R. Civ. P. 9(b); *see also Schwartz*, 124 F.3d at 1252 (explaining that "Rule 9(b) requires only the identification of the circumstances constituting fraud, and that it does not require any particularity in connection with an averment of intent, knowledge or condition of mind" (citation omitted)). And, "[a]llegations of fraud may be based on information and belief when the facts in question are peculiarly within the opposing party's knowledge and the complaint sets forth the factual basis for the plaintiff's belief." *Scheidt v. Klein*, 956 F.2d 963, 967 (10th Cir. 1992) (citations omitted).

Plaintiff's Complaint asserts two fraud claims: Count II alleges fraud, promissory fraud, misrepresentation; and Count III alleges fraudulent suppression. Defendants argue that plaintiff has failed to plead these fraud claims with particularity as Fed. R. Civ. P. 9(b) requires. The court disagrees.

The Complaint asserts that Mid-West sent plaintiff a letter on May 4, 2016, that directed plaintiff to resume shipments immediately to the Minnesota Project and that represented that Mid-West had a letter of credit with Essar that would allow Mid-West to pay plaintiff for its work. Doc. 1 at 5 (Complaint ¶¶ 21, 22, 23); Doc. 14-2. The letter was presented on Dearborn letterhead and signed by defendant Braxton Jones on behalf of "Dearborn Mid-West Conveyor Company." Doc. 14-2. Plaintiff's Complaint also alleges that defendants Larry Harp and Braxton Jones, individually and on behalf of Mid-West, made false representations to plaintiff in person and in writing between September 2015 and July 2016. Doc. 1 at 10 (Complaint ¶¶ 47–48). And, plaintiff's Complaint alleges that Mid-West, Mr. Harp, and Mr. Jones intentionally, recklessly, and negligently suppressed material facts from plaintiff between September 2015 and July 2016. *Id.* at 11–12 (Complaint ¶¶ 47–48).

The court concludes that these allegations allege fraud with sufficient particularity to satisfy the requirements of Fed. R. Civ. P. 9(b). Plaintiff has alleged the who, what, where, when and how of the alleged fraud in sufficient detail so that defendant can prepare a competent defense to the allegations. The court thus denies defendants' Motion to Dismiss plaintiff's fraud claims for this reason.

### D. Has Plaintiff Stated a Claim for Fraudulent Suppression?

Defendants assert that plaintiff cannot state a claim for fraudulent suppression as a matter of law. Doc. 10 at 9–10. Defendants contend that plaintiff seeks to impose a duty of disclosure

on defendants arising after the parties entered the contact and during the parties' performance of the contract. Defendants assert that Kansas law imposes no such duty on the parties to a contract. *See Plastic Packaging Corp. v. Sun Chem. Corp.*, 136 F. Supp. 2d 1201, 1205 (D. Kan. 2001) (holding that defendant has no duty to disclose information that it discovered while performing the contract).

Plaintiff responds that Kansas law imposes a duty on defendants to correct any material misrepresentations, even if no duty exists at the relationship's inception. *See Great Plains Christian Radio, Inc. v. Cent. Tower, Inc.*, 399 F. Supp. 2d 1185, 1196 (D. Kan. 2005) (explaining that, in Kansas, "a defendant who speaks is under a duty not to mislead by disclosing only a portion of the truth" (citing *Sparks v. Guar. State Bank*, 318 P.2d 1062, 1065 (Kan. 1957))). And, plaintiff argues, the Complaint sufficiently alleges that defendants breached this duty.

Defendants' Reply never addresses this argument. In fact, their Reply never references their original request for dismissal of the fraudulent suppression claim for failing to state a claim. Thus, it appears that defendants have abandoned this argument. But, even if defendants haven't abandoned this argument, the court concludes that plaintiff has stated a claim for relief under Kansas law. As plaintiff correctly explains, a duty to refrain from misrepresentation or suppression of facts arises when one elects to speak either voluntarily or in response to an inquiry. *See Sparks*, 318 P.2d at 1065 (explaining that if one elects to speak at all, he must make a full and fair disclosure (citations and internal quotation marks omitted)). Here, plaintiff's Complaint alleges that Mr. Harp and Mr. Jones made representations that defendants would pay plaintiff's extra-contractual expenses associated with the accelerated shipment schedule and that an existing letter of credit with Essar would allow defendants to pay those expenses. Plaintiff's

Complaint also alleges that Mr. Harp and Mr. Jones suppressed material facts when they made these representations or, alternatively, they later learned that these representations were untrue but failed to correct them. These facts sufficiently assert a plausible claim for fraudulent suppression under Kansas law. The court thus denies defendants' Motion to Dismiss plaintiff's fraudulent suppression claim.

### E. Are Plaintiff's Claims Against Dearborn, Larry Harp, and Braxton Jones Barred by the Statute of Frauds?

Finally, defendants assert that plaintiff's claims against Dearborn, Larry Harp, and Braxton Jones are barred by the statute of frauds because these three defendants never executed a signed writing promising that they would be liable for any of Bedeschi's alleged debts.

Kan. Stat. Ann. § 33-106 requires an agreement "to answer for the debt, default or miscarriage of another person" to be in writing and signed by the party charged. A contract that fails to satisfy these requirements is unenforceable under the statute of frauds. *Evans v. Lynch*, 436 P.2d 867, 869 (Kan. 1968). But, an exception to the statute of frauds exists—oral agreements are enforceable in Kansas when a party relies "upon the agreement to his or her detriment and a gross injustice would result if the oral agreement was not enforced." *Bank of Alton v. Tanaka*, 799 P.2d 1029, 1035 (Kan. 1990).

Here, defendants' statute of frauds argument fails to carry the day for two reasons. First, plaintiff's fraud claims seek to hold Dearborn, Mr. Harp, and Mr. Braxton liable for extra-contractual damages. These claims do not try to hold these defendants liable for Bedeschi's contractual debts. Instead, the fraud claims seek to hold defendants liable for their own purported fraudulent conduct. The statute of frauds thus does not provide an affirmative defense to plaintiff's fraud claims. *See Zurn Constructors, Inc. v. B.F. Goodrich Co.*, 746 F. Supp. 1051, 1058 (D. Kan. 1990) (holding that the statute of frauds did not preclude the plaintiff's fraud

claim because the claim did not depend upon proof of a contract but instead depended on proof of the elements of fraud).

Second, to the extent plaintiff seeks to recover other damages from Dearborn, Bedeschi, and Braxton, plaintiff has pleaded sufficiently an exception to the statute of frauds—detrimental reliance. Plaintiff alleges that defendants made various misrepresentations and that plaintiff relied on those misrepresentations to its detriment, incurring substantial losses and damages. *See* Doc. 1 at 9–11 (Complaint ¶¶ 46, 50, 51). Viewing the Complaint's allegations in the light most favorable to plaintiff, the statute of frauds does not bar those claims.

Defendants counter, arguing that plaintiff cannot invoke an exception to the statute of frauds because plaintiff cites no cases applying the detrimental reliance exception to an alleged promise to pay the debt of another. One of the cases plaintiff cites applied the rule to a promise to convey property. *See Taylor v. Holyfield*, 180 P. 208, 208–09 (Kan. 1919) (holding that "the evidence [established] such a performance of the contract by the plaintiff as to take it out of the operation of the statute [of frauds]"). The other case cited the detrimental reliance rule in a guaranty case, but did not apply it on summary judgment because plaintiff submitted no evidence to support it. *See Wolfson v. Nutt*, No. 08-3190-GLR, 2010 WL 4568152, at *3–6 (D. Kan. Nov. 3, 2010) (holding that an alleged loan agreement and personal guaranty were barred by the statute of frauds because plaintiff adduced no evidence of a written contract and had shown no reason to "to take the alleged guaranty outside the statute [of frauds]").

But, defendants have cited no cases holding that the detrimental reliance exception cannot apply to a promise to pay the debt of another. Indeed, the court's own research has located no authority for this proposition. The Tenth Circuit, however, has affirmed application of the detrimental reliance exception to promises to pay the debt of another in cases applying

other states' laws governing the statute of frauds. *See DeBoer Constr., Inc. v. Reliance Ins. Co.*, 540 F.2d 486, 494 (10th Cir. 1976) (applying Oklahoma law and affirming the trial court's decision that performance had occurred sufficient to take an oral agreement for a labor and material payment bond outside of the statute of frauds); *see also Abraham v. H. V. Middleton, Inc.*, 279 F.2d 107, 109 (10th Cir. 1960) (applying New Mexico law and affirming a trial court's decision that an oral promise to pay the debt of another was not barred by the statute of frauds for three reasons including that plaintiff "fully performed the drilling contract in reliance upon the oral promise").

On this record, the court cannot conclude that the statute of frauds bars plaintiff's claims against Dearborn, Mr. Harp, and Mr. Braxton. The court thus denies defendants' Motion to Dismiss on this basis as well.

## VI.    Conclusion

For the reasons explained above, the court denies plaintiff's Motion to Strike, In Part, Defendants' Reply in Support of Motion to Dismiss for Failure to State a Claim (Doc. 23) because a motion to strike is not the proper procedural vehicle to address new arguments asserted in a reply. The court also denies defendants' Motion to Dismiss for the reasons explained above.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion to Dismiss for Failure to State a Claim (Doc. 10) is denied.

**IT IS FURTHER ORDERED THAT** plaintiff's Motion to Strike (Doc. 23) is denied.

**IT IS SO ORDERED.**

**Dated this 8th day of May, 2017, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**