**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| NORTH ALABAMA FABRICATING COMPANY, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 16-cv-2740-DDC-TJJ ) |
| BEDESCHI MID-WEST CONVEYOR COMPANY, LLC; DEARBORN MID-WEST CONVEYOR COMPANY; LARRY HARP; and BRAXTON JONES, | ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff has filed a Motion for Sanctions (ECF No. 78) requesting the Court impose sanctions, in the form of default judgment and monetary sanctions, upon all Defendants. Plaintiff bases its request for sanctions upon Defendants' allegedly false and misleading interrogatory answers and objections, which stated assembly of Plaintiff's fabricated steel goods was required in order for Defendants to determine whether the goods were defective, and upon Defendant Bedeschi's alleged failure to properly prepare its Rule 30(b)(6) corporate representatives by having them inspect the allegedly defective goods prior to their depositions. Finally, Plaintiff claims sanctions are warranted for Defendant Bedeschi filing its counterclaim based on alleged defects in Plaintiff's delivered goods without any supporting evidence.

As explained below, the motion is granted in part and denied in part. Defendant Bedeschi will be sanctioned for its failure to produce prepared Rule 30(b)(6) witnesses for deposition. But the sanctions imposed are limited to allowing another deposition, at Bedeschi's expense, regarding Topics 8, 9, 11, 12, and 13 set forth in Plaintiff's Notice, including the alleged "delays and defects in the products shipped by Plaintiff," the nonconformance reports, and the Inspection Report

subsequently produced on August 23, 2017.

## I. Relevant Facts

Plaintiff North Alabama Fabricating Company, Inc., a structural steel fabricating company, brings claims for breach of contract and fraud against four Defendants: Bedeschi Mid-West Conveyor Company, LLC ("Bedeschi"); Dearborn Mid-West Conveyor Company ("Dearborn"), Bedeschi's president, Larry Harp ("Harp"); and Bedeschi's project manager, Braxton Jones ("Jones"). Plaintiff and Bedeschi entered into written contracts pursuant to which Plaintiff would manufacture fabricated steel equipment and support structures to be assembled into an iron ore conveyor system for Bedeschi's customer, Essar Steel Minnesota, LLC (the "Essar Project"). In this action, Plaintiff seeks payment for fabricated steel it manufactured under its contracts with Bedeschi. Plaintiff alleges Bedeschi took possession of the fabricated steel goods between December 2015 and July 2016 and shipped them to Essar's facility in Minnesota.

Defendants' Answers[1] allege that the fabricated steel delivered by Plaintiff was defective and/or failed to comply with the contracts. Bedeschi also asserts a counterclaim alleging, *inter alia*, that Plaintiff "has delivered goods and materials which failed to conform to the requirements and specifications identified in the [contracts] by, among other things, delivering parts, goods and components in a disassembled or otherwise unfinished condition."[2]

Defendants served their Rule 26(a) initial disclosures on February 20, 2017, identifying Defendant Jones as an individual with knowledge of the "delays and defects in the products shipped by Plaintiff." Defendants also identified Bedeschi employee Skip Moore ("Moore") as

---

[1] ECF Nos. 38–41.

[2] Bedeschi Counterclaim at 16, ECF No. 41.

having knowledge of "the timing and defects in Plaintiff's fabricated materials supplied to Bedeschi."[3]

On April 27, 2017, Plaintiff served interrogatories on Defendants Bedeschi, Harp, and Jones inquiring about the alleged defects in the goods Plaintiff delivered under the contracts. Plaintiff's First Set of Interrogatories asked Defendants to identify the following:

- all non-conforming goods, if any, supplied by [Plaintiff] pursuant to the Contract Documents (Interrogatory No. 5);

- all breaches of warranty, if any, committed by [Plaintiff] under the Contract Documents (Interrogatory No. 6);

- the factual basis for Bedeschi's 'potential claims' against [Plaintiff], as that phrase is used in Defendants' Initial Disclosures (Interrogatory No. 12); and

- all delays and defects in the products shipped by Plaintiff (Interrogatory No. 13).

Defendants Bedeschi, Harp, and Jones served their interrogatory answers and objections on June 7, 2017.[4] In each of their answers to Interrogatory No. 5, they objected that answering the interrogatory required them "to speculate, in that there is no way to know whether [Plaintiff] supplied nonconforming goods until the goods supplied by [Plaintiff] are assembled into the final product at the project site."[5] Defendants' other interrogatory answers likewise objected that it would be "impossible" to know if there was any breach of warranty or if the materials were properly detailed or fabricated until the goods supplied by Plaintiffs are assembled into the final product at the project site.

---

[3] Defs.' Initial Rule 26(c) Disclosures, ECF No. 78-10.

[4] *See* Defs.' Certificate of Service, ECF No. 48.

[5] Bedeschi's Ans. & Objections at 8, ECF No. 78-3. Harp's Ans. & Objections at 8, ECF NO. 78-6.

Plaintiff also served its first requests for production upon Bedeschi and Harp seeking "documents related to any 'defects in Plaintiff's fabricated materials supplied to Bedeschi'" (Request 14) and "documents related to any latent defects Defendants have discovered in product supplied by [Plaintiff] pursuant to the Contract Documents" (Request 15).[6] Bedeschi and Harp responded "[s]ee objections and responses to Interrogatories 5, 6, 12 and 13,"[7] and did not produce any responsive documents.

On May 8, 2017, Plaintiff served a Rule 30(b)(6) deposition notice on Bedeschi, which included the following topics related to Bedeschi's counterclaim and allegation that the goods supplied by Plaintiff are defective:

- The conformance of goods supplied by [Plaintiff] pursuant to the Contract Documents (Topic 8);

- The "delays and defects in the products shipped by Plaintiff," as that phrase is used in Defendants' Initial Disclosures (Topic 9);

- Issues related to testing and quality control of goods shipped by [Plaintiff] pursuant to the Contract Documents (Topic 11);

- Any breaches of the Contract Documents alleged[ly] committed by [Plaintiff] (Topic 12); and

- The factual basis for Bedeschi's "potential claims" against [Plaintiff], as that phrase is used in Defendants' Initial Disclosures (Topic 13).

Plaintiff deposed Bedeschi's corporate representatives, Jones and Harp, on August 2, 2017, and deposed fact witness Moore on August 3, 2017. Jones testified that Bedeschi had not inspected the goods delivered by Plaintiff to the Essar project to confirm whether any of the goods were

---

[6] Bedeschi June 7, 2017 Responses & Objs. to First. Req. for Produc. at 10, ECF No. 78-18. Harp Responses, ECF No. 78-19.

[7] *Id.*

defective.[8] Harp also testified that, at the time of this deposition, Bedeschi had not taken any measures to inspect Plaintiff's goods delivered to the Essar project.[9]

On August 10, 2017, the week after their depositions, Jones, Harp, and Moore traveled from Missouri to Minnesota to inspect the unassembled goods. On August 23, 2017, Defendants produced the Daily Paint Inspection Report ("Inspection Report") prepared by Moore with the findings from the August 10 inspection. The comments section of the Inspection Report states:

> Visual observation and DFT verification of conveyor steel in outdoor storage at Essar site. Observations: Rust bloom on horizontal and vertical surfaces, mostly on stringer deck plates, legs, inside bolt holes and on edges.[10]

On September 19, 2017, Plaintiff's counsel sent a letter to Defendants' counsel informing of Plaintiff's intent to file a motion for sanctions based upon Defendants' discovery and litigation abuse. Defense counsel responded by letter dated September 27, 2017, disputing that Defendants committed any discovery violations. Counsel participated in a conference call on October 5, 2017 to discuss the issues raised, but failed to reach a resolution.

Plaintiff filed its Motion for Sanctions on October 11, 2017. The motion includes a separate certification that details its counsel's letters, emails, in-person meeting, and telephone conferences attempting to resolve the issues raised in its motion as required by Fed. R. Civ. P. 37(d)(1)(B) and D. Kan. Rule 37.2.

## II.     Plaintiff's Request for Sanctions Based upon Defendants' Interrogatory Responses

Plaintiff requests the Court enter an order sanctioning Defendants based on their answers

---

[8] Jones Dep. 497:8–13, ECF No. 78-11.

[9] Harp Dep. 87:17–21, ECF No. 78-13.

[10] Inspection Report, ECF No. 78-2.

and objections to Plaintiff's interrogatories, which inquired regarding Bedeschi's defense and counterclaim that the contracted goods delivered by Plaintiff were defective. Plaintiff contends that Defendants' interrogatory responses, stating that it was "impossible" for Defendants to determine whether Plaintiff's goods were defective until assembled into the final product at the project site, are false and misleading. Plaintiff argues these interrogatory responses are misleading because it was possible for Bedeschi to inspect the unassembled goods and determine whether they were defective. Bedeschi's corporate representatives were able to inspect the goods in their unassembled state only seven days after their Rule 30(b)(6) depositions and conclude from that inspection whether the goods were defective. Defendants and Essar had not assembled Plaintiff's goods into a final product at the time Defendants served its interrogatory responses, nor have they ever assembled the goods to date.

Defendants argue that Plaintiff's motion for sanctions should be denied because Plaintiff never requested or obtained a court order compelling discovery under Fed. R. Civ. P. 37(a). Defendants further argue the motion is untimely under D. Kan. Rule 37.1(b), which requires a motion to compel discovery be filed within 30 days of the default or service of the objectionable discovery responses. Defendants maintain that they truthfully responded to Plaintiff's interrogatories with the information they had at the time they served their discovery responses. Defendants also point out that the goods at issue were delivered directly to their customer Essar in northern Minnesota, and thus were not in their possession.

Plaintiff acknowledges in its reply that sanctions under Rule 37(b) are available when a party fails to comply with a court order and therefore Rule 37(b) does not apply here, but argues Rule 37(c) authorizes sanctions when a party fails to "provide information or identify a witness."

Plaintiff is correct that Rule 37(c) sanctions do not require it to file a motion to compel as a prerequisite, but Plaintiff offers no authority and does not expand upon its one-sentence reference to Rule 37(c). Plaintiff's argument that Rule 37(c) applies here is not persuasive. Defendants made their initial disclosures as required by Rule 26(a)(1). Although Defendants had a duty to supplement under Rule 26(e) in a timely manner if/when they learned their interrogatory responses were incomplete or incorrect, the Court finds any duty for Defendants to supplement did not arise until their August 10, 2017 inspection of the goods. At that time, Defendants were required under Rule 26(e) to timely serve supplemental interrogatory answers with the new information learned from the inspection *or otherwise make the additional or corrective information known to Defendants.*[11] Bedeschi did this by producing nonconformance reports and, more significantly their Inspection Report, shortly after the inspection and a month before the discovery deadline.[12] Once Defendants served Plaintiff with the Inspection Report, Plaintiff could have conducted additional discovery and/or requested an extension of the discovery deadline to conduct any additional discovery needed.

Although Plaintiff asserts Defendants also violated Rules 11, 26, and 33 by giving false interrogatory answers, it makes no specific argument that sanctions should be awarded for these particular Rule violations. Rule 11 does not apply to discovery responses[13] Rule 33, which

---

[11] *See* Fed. R. Civ. P. 26(e)(1)(A)(" A party . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.").

[12] The Court also notes that Defendant Bedeschi served its First Amended Answers and Objections to Plaintiff's First Set of Interrogatories on August 23, 2017. ECF No. 68.

[13] *See* Fed. R. Civ. P. 11(d) (Rule 11 "does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37.").

governs interrogatories, does not provide for sanctions itself. A party must seek sanctions for improper interrogatory answers under Rule 37. However, as discussed above, the Court has rejected Plaintiff's Rule 37 arguments.

Rule 26(g), although not expressly raised by Plaintiff, applies to incomplete and incorrect disclosures but not to discovery responses.[14] Plaintiff's motion for sanctions is based upon allegedly incomplete and incorrect interrogatory responses and objections rather than disclosures. Therefore, Rule 26(g)(1)(A) does not appear applicable. Moreover, there is no evidence Defendants knew the answers and objections they served to Plaintiff's First Interrogatories Nos. 7–9, 11–13 and First Requests 14–15 were incomplete or incorrect when signed. It could be that Defendants believed assembly of the goods was necessary to determine whether the goods were defective or nonconforming, until they actually inspected the goods unassembled. To the extent the interrogatory answers or responses to requests for production were inaccurate regarding Defendants' inability to determine nonconformance until assembly of the goods, Defendants' production of the Inspection Report corrected their earlier inaccurate answers a month before the discovery deadline. Thus, under Rule 26(e)(1)(A), the Inspection Report constituted "additional or corrective information" otherwise made known to Plaintiff during the discovery process.

With respect to Defendants' argument that Plaintiff's motion is untimely under D. Kan. Rule 37.1(b), the Court finds that Rule inapplicable to Plaintiff's Motion for Sanctions. Unlike D. Kan. Rule 37.2, which applies to "any motion to resolve a discovery dispute pursuant to Fed. R.

---

[14] Fed. R. Civ. P. 26(g)(1) provides:

By signing, an attorney or party certifies that to the best of the person's knowledge, information, or belief *formed after reasonable inquiry*:
(A) with respect to a *disclosure,* it is complete and correct as of the time it is made; and
(B) with respect to a discovery request, response, or objection, it is:
   (i) consistent with these rules and warranted by existing law . . . ,
   (ii) not interposed for an improper purpose . . . .   (emphasis added).

Civ. P. 26 through 37," D. Kan. Rule 37.1(b)'s 30-day deadline only applies to the filing of a "motion to compel discovery." Plaintiff concedes in its reply that it is not seeking to compel any discovery from Defendants.[15] As Plaintiff's Motion for Sanctions does not seek to compel any discovery from Defendants, only to sanction them, Plaintiff was not required to file its Motion for Sanctions within 30 days of service of Defendants' allegedly false discovery responses.

Turning to the merits of Plaintiff's motion, the Court denies the request for sanctions based upon Defendants' allegedly false and misleading interrogatory responses. There is no evidence that at the time of signing Defendants knew their answers and objections to Plaintiff's First Interrogatories Nos. 7–9, 11–13 and First Requests 14–15 were inaccurate. In addition, Defendants' production of the Inspection Report corrected their earlier inaccurate answers a month before the discovery deadline and allowed Plaintiff the opportunity to conduct discovery on this new information.

With respect to Plaintiff's argument that Defendants should have inspected the goods earlier, the Court agrees with Plaintiff that Defendants should have made arrangements with Essar to inspect the goods they were claiming defective long before they did so here. Bedeschi asserted a counterclaim in May 2017 asserting the goods contractually supplied by Plaintiff were defective and responded to interrogatories in June 2017 inquiring about the alleged defects. But it waited until August 10, 2017, nearly six weeks before the September 22, 2017 discovery deadline to make arrangements to inspect the goods. Nonetheless, Bedeschi ultimately did inspect the goods and

---

[15] Presumably, this is because Plaintiff's motion, if it sought to compel discovery, would have been untimely under D. Kan. Rule 37.1(b). More than 30 days have passed from the time Defendants served their discovery responses and Inspection Report until Plaintiff filed its motion. The Court is aware that Plaintiff did not know that Defendants' discovery responses (i.e., that the goods had to be assembled to determine defects) were inaccurate until Defendants produced the Inspection Report on August 23, 2017. But Plaintiff's motion was not filed until October 11, 2017, more than 30 days after receipt of the Inspection Report.

9

produce the Inspection Report on August 23, 2017, which was a month before the discovery deadline. Bedeschi also offered to allow another Rule 30(b)(6) deposition concerning the Report's findings and to pay the cost of the deposition transcript. Thus, despite Bedeschi's belated inspection and production of documents supporting its counterclaims, the Court finds Plaintiff will not be prejudiced by Defendants' delay, given the additional deposition the Court will allow as discussed below. Additionally, the Court finds, as discussed at length above, that Defendants' interrogatory responses did not violate any discovery rules that would authorize the imposition of sanctions.

### III. Plaintiff's Request for Sanctions Based Upon Defendant Bedeschi's Alleged Failure to Provide Properly Prepared Rule 30(b)(6) Corporate Representatives for Deposition

Plaintiff also requests sanctions based upon Defendant's alleged intentional failure to provide properly prepared Rule 30(b)(6) corporate representatives for deposition. It alleges Bedeschi deliberately chose not to prepare its corporate representatives so that Bedeschi could substantiate its counterclaims after its corporate representatives could be cross examined on the issue. According to Plaintiff, prior to producing the nonconformance reports and Inspection Report, Defendants never once made a single mention in any disclosure, discovery response or deposition of any evidence that would support its claim Plaintiff's goods were defective. Instead, Defendants repeatedly told Plaintiff that it would be "impossible" for them to determine whether the goods were defective until after assembly and, therefore, they had no reason to inspect them.

Bedeschi argues that Rule 30(b)(6) only requires them to produce a corporate designee to testify about information known or "reasonably available" to it. Bedeschi submits that information about the condition of the goods delivered by Plaintiff, which are located in northern Minnesota in

the possession of its customer Essar, would not constitute information "reasonably available" to it. They also argue that they are not required to travel to an out-of-state location and conduct an inspection of the goods to properly prepare their Rule 30(b)(6) witnesses. They cite cases finding a corporate party's obligation to prepare a 30(b)(6) designee to testify as to matters "reasonably known" to the defendant does not require it to conduct a separate investigation to answer the noticed topics.

Federal Rule of Civil Procedure 30(b)(6) requires that persons designated to testify on behalf of an entity "must testify about information known or reasonably available to the organization." "For a Rule 30(b)(6) deposition to operate effectively, the deposing party must designate the areas of inquiry with reasonable particularity, and the corporation must designate and adequately prepare witnesses to address these matters."[16] Thus, the Rule implicitly requires a designated representative to review "all matters known or reasonably available to the organization" in preparation for the Rule 30(b)(6) deposition.[17] This is necessary to prevent a party from sandbagging its opponent by conducting a minimal inquiry before the deposition but a thorough inquiry in preparation for trial, which would defeat the purpose of discovery.[18]

> A notice of deposition made pursuant to Rule 30(b)(6) requires the corporation to produce one or more officers to testify with respect to matters set out in the deposition notice or subpoena. A party need only designate, with reasonable particularity, the topics for examination. *The corporation, then must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledgeable and binding answers on behalf of the corporation.*[19]

---

[16] *Starlight Int'l Inc. v. Herlihy*, 186 F.R.D. 626, 638 (D. Kan. 1999).

[17] *Id.*

[18] *Id.*

[19] *Audiotext Commc'ns Network, Inc. v. US Telecom, Inc.*, No. 94-2395-GTV, 1995 WL 625962, at

Foremost among the purposes of Rule 30(b)(6) is to "curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it."[20] A party does not fulfill its obligations at the Rule 30(b)(6) deposition by stating it has no knowledge or position with respect to a set of facts or area of inquiry within its knowledge or reasonably available.[21]

Producing an unprepared witness for a Rule 30(b)(6) deposition "is tantamount to a failure to appear at a deposition" and therefore constitutes sanctionable conduct under Fed. R. Civ. P. 37(d)(1)(A).[22] In determining the appropriate sanction to be imposed, the court must consider the purposes to be served by the imposition of sanctions."[23] Such purposes include "(1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court dockets and facilitating case management."[24]

Plaintiff's Rule 30(b)(6) notice listed 22 topics for Bedeschi's designated witnesses. Topics 8 and 9 sought testimony from Bedeschi regarding the conformance of goods supplied by Plaintiff, and "delays and defects in the products shipped by Plaintiff." Topics 11 through 13 sought testimony on issues related to testing and quality control of goods shipped by Plaintiff pursuant to the contract, any breaches of the contract Defendants allege Plaintiff committed, and

---

*13 (D. Kan. Oct. 5, 1995) (quoting *Marker v. Union Fid. Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989)) (emphasis added).

[20] Fed. R. Civ. P. 30(b)(6) advisory committee's note to 1970 amendment.

[21] *Starlight,* 186 F.R.D. at 638 (citation omitted).

[22] *Cherrington Asia Ltd. v. A & L Underground, Inc.*, 263 F.R.D. 653, 658 (D. Kan. 2010) (quoting *Starlight*, 186 F.R.D. at 639).

[23] *RTC v. Williams*, 162 F.R.D. 654, 660 (D. Kan. 1995).

[24] *Starlight*, 186 F.R.D. at 647.

the factual basis for Bedeschi's "potential claims" against Plaintiff. Defendant Bedeschi did not object to any of the topics and designated Jones and Harp as its 30(b)(6) corporate representative witnesses. Defendants had also previously identified Jones in their Rule 26(a) disclosures as having knowledge regarding defects.

Bedeschi produced Jones and Harp for deposition as its Rule 30(b)(6) corporate representatives on August 2, 2017. Jones, who is Bedeschi's president, testified that Bedeschi had not inspected the goods delivered by Plaintiff to the Essar project to confirm whether any of the goods were defective.[25] He further testified that Bedeschi had conducted three inspections at Plaintiff's facility, but had not gone to the Essar site to inspect the goods after delivery.[26] Harp similarly testified that, at the time of his deposition, Bedeschi had not taken any measures to inspect Plaintiff's goods delivered to the Essar project.[27] Plaintiff also deposed fact witness Moore, Bedeschi's Director of Safety and Quality, who also testified he did not have any evidence of nonconforming product delivered by Plaintiff to the Essar project,[28] and he had not sent an inspector to review the painting and fabrication on the delivered goods.[29]

The Court has reviewed the Jones and Harp deposition testimony and finds that Bedeschi inadequately prepared these witnesses to testify as its Rule 30(b)(6) representatives regarding Bedeschi's knowledge on the designated topics. Specifically, Bedeschi failed to make even minimal inquiry to prepare its designated witnesses to testify on deposition topics regarding

---

[25] Jones Dep. 497:8–13, ECF No. 78-11.

[26] Jones Dep. 498:6–22.

[27] Harp Dep. 87:17–21, ECF No. 78-13.

[28] Moore Dep. 59:14–23, ECF No. 78-12.

[29] Moore Dep. 60:3–13.

Bedeschi's allegation the goods delivered by Plaintiff pursuant to their contracts were defective or otherwise nonconforming, which is the basis for Defendants' counterclaim. Given the importance of this issue in the case and in light of its former discovery responses indicating inspection of the goods was impossible due to their unassembled state, Bedeschi should have made reasonable efforts to prepare its Rule 30(b)(6) to testify on this topic.   Reasonable efforts here would have entailed having its representatives actually inspect the goods at issue so that it could advise Plaintiff how they were defective and/or non-conforming. And, contrary to Bedeschi's argument, the Court finds the goods at issue were reasonably available to Bedeschi well before the deposition date. Although the goods were delivered to Essar, and thus were not located on Bedeschi's premises, Bedeschi could have easily made arrangements with its client Essar to inspect the goods. The fact that Bedeschi was able to quickly arrange for the trip to inspect the goods on August 10, 2017, a week after the depositions, is evidence that the goods were reasonably available to it for inspection. Bedeschi's argument that it would have to travel to another state to inspect the goods is unpersuasive. These are not horse and buggy days. Additionally, Bedeschi never offers any credible explanation for why it did not inspect the goods earlier. All testimony and discovery responses suggest Bedeschi asserted its counterclaim without any support for its nonconformance claim until it actually inspected the goods. Bedeschi should have inspected the goods before it produced its Rule 30(b)(6) representatives to testify regarding deposition topics inquiring about the alleged "delays and defects in the products shipped by Plaintiff," if Bedeschi intended to pursue its counterclaim. Bedeschi's actions of conducting only minimal inquiry before producing its designated Rule 30(b)(6) witness for deposition on these topics smacks of the very sort of sandbagging courts have explicitly spoken against.[30]

---

[30] *Starlight,* 186 F.R.D. at 638.

The Court finds Bedeschi's designation and production of Jones and Harp as its Rule 30(b)(6) witnesses, when neither of them had inspected the goods and were not prepared to answer questions on these topics, "is tantamount to a failure to appear at a deposition," and therefore constitutes sanctionable conduct under Fed. R. Civ. P. 37(d)(1)(A). The Court finds, however, that Plaintiff's requested sanction of entry of default judgment is not warranted, but will instead grant in part the alternative relief requested by Plaintiff. Accordingly, Defendant Bedeschi shall produce an additional corporate representative, or produce Jones for a second deposition. This corporate representative shall be fully prepared, as required by Rule 30(b)(6), to testify regarding Topics 8, 9, 11, 12, and 13 set forth in the Notice, including the alleged "delays and defects in the products shipped by Plaintiff," the nonconformance reports, and the Inspection Report subsequently produced on August 23, 2017. This deposition shall take place within 30 days of the date of this order. The Court will also require Bedeschi to pay Plaintiff's reasonable costs and expenses incurred in conducting this deposition, and the cost of the transcript from the deposition.[31]

The Court finds that the appropriate sanction for failing to properly prepare its Rule 30(b)(6) is to allow a deposition regarding the Inspection Report and alleged defective and nonconforming goods, at Bedeschi's expense. This sanction should punish Bedeschi for its production of an unprepared Rule 30(b)(6) witness on topics underlying its counterclaims, as well as fairly compensate Plaintiff for the violation and prevent injustice. As for Plaintiff's request that default judgment be entered, the Court finds that this severe sanction should only be used as a

---

[31] *See* Fed. R. Civ. P. 37(d)(3) ("Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi). Instead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.").

15

weapon of last resort, and only when a lesser sanction would not serve the interests of justice.[32] Here, the lesser sanction of requiring Bedeschi is to produce a corporate representative on the topics at issue will eliminate any prejudice to Plaintiff. Also influencing the Court's decision is the fact Plaintiff could have sought relief before the discovery deadline expired and the fact Bedeschi offered to produce Jones for another deposition and pay for the transcript.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Sanctions (ECF No. 78) is granted in part and denied in part. Defendant Bedeschi shall produce an additional corporate representative, or produce Jones for a second deposition, **within thirty (30) days of the date of this Memorandum and Order**. This corporate representative shall be fully prepared, as required by Rule 30(b)(6), to testify regarding Topics 8, 9, 11, 12, and 13 set forth in Plaintiff's Notice, including the alleged "delays and defects in the products shipped by Plaintiff," the nonconformance reports, and the Inspection Report subsequently produced on August 23, 2017. Bedeschi shall pay Plaintiff's reasonable costs and expenses incurred in conducting this deposition, and the cost of the transcript from the deposition.

Dated this 3rd day of January 2018, at Kansas City, Kansas.

*[signature: Teresa J. James]*

Teresa J. James
U. S. Magistrate Judge

---

[32] *Starlight,* 186 F.R.D. at 648.